The CITY OF EL PASO, Appellant,

v.

W.E.B. INVESTMENTS, David Bingham, and J.J. Wilkinson, Appellees.

No. 08–96–00273–CV.

Court of Appeals of Texas, El Paso.

July 17, 1997.

Rehearing Overruled Aug. 13, 1997.

John Gates, Assistant City Attorney, David C. Caylor, El Paso, for Appellant.

David M. Driscoll, El Paso, for Appellees.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

The City of El Paso appeals a judgment following jury trial awarding plaintiffs J.J. Wilkinson, David Bingham, and W.E.B. Investments (W.E.B.) $18,641. The City claims that it established, as a matter of law, its affirmative defense of sovereign immunity and that the trial court erred in not granting its motion for directed verdict and its motion for judgment n.o.v. The City also complains that the trial court erred in granting the plaintiffs' motion to disregard jury findings and increasing the damage award. We affirm the liability findings, but reform the damage award to conform with the jury verdict.

### FACTS

On February 23, 1993, the City of El Paso (City) sent notice to the owners of property located at 3500 Pera in El Paso, informing them of a public hearing on March 16 to determine if buildings on the property should be condemned. Plaintiffs, as lienholders, were notified and David Bingham, a W.E.B. partner, appeared at the hearing.

On March 16, 1993, the City Council issued a resolution stating that the buildings on W.E.B.'s property at 3500 Pera in El Paso were "dilapidated, substandard and unfit for human habitation; [and] are a hazard to public health, safety and welfare...." W.E.B. was ordered to vacate and secure the front building within 60 days, submit plans for its rehabilitation and complete the rehabilitation or demolish the building within 210 days from the adoption of the resolution. The resolution also ordered that the rear building be demolished within 20 days of the adoption of the resolution. The rear building and portion of the lot, however, were not owned by W.E.B.

William Bennett, city building inspection supervisor, testified that it is department policy to begin counting the 210 days from the date that notice of the resolution is given to the last party of record. The final notice on 3500 Pera was delivered in July 1993, making the property subject to demolition in February 1994.

In August 1993, the City prepared a Public Inspection Demolition Directive form for the Superintendent of Streets, ordering the demolition of the rear building at 3500 Pera. The same directive authorized the demolition of the front building after February 17, 1994, unless it was repaired. The City agreed that there was a typographical error in the directive. The "Demolition Clearances" section of the form which is the controlling instruction, clearly stated that the rear building was to be demolished after August 11, 1993 and that the front building was to be demolished after February 17, 1994 if it was not repaired. These same dates were repeated on the form in the section labeled "Demolition Date." The error appears in a section on the same form labeled "Directive Issued." Salvador Ochoa signed this section of the directive. Next to his signature the instruction was, "Demolish rear bldg after 8/11/93 demolish front bldg after 2/17/93 unless repaired." [Emphasis added.]

On October 5, 1993, 203 days after the City Council passed the resolution, both buildings at 3500 Pera were bulldozed, the lot leveled, and the debris hauled off. Edward Doblado, the street operations supervisor who oversaw the demolition of the buildings, testified that his supervisor, Daryl Cole, instructed him to carry out a demolition at 3500 Pera. He also admitted that he noticed a discrepancy between the date on the "Demolition Clearances" and the "Directive Issued" sections of the order. Because a building inspector had signed off on the "Directive Issued" section of the form, Doblado demolished both buildings. Doblado admitted he could have checked with the director of streets to clarify the order but he did not. Daryl Cole, street superintendent for the City, testified that he did not notice the discrepancy in the dates when he signed the demolition directive. He discovered the error when he inspected the demolition site and found his crew had knocked down the wrong building. Mr. Cole berated the crew chief asking, "didn't you read the directive?" At this point, Mr. Doblado pointed out the discrepancy in the dates.

After the building was demolished, David Bingham filed a claim with the City for the loss of the property. The City Attorney insisted W.E.B. had received the benefit of the demolition costs incurred by the City and informed Mr. Bingham that she would recommend to City Council that the claim be settled by forgiveness of the cost of the demolition and clean up. In addition to denying W.E.B.'s claim for damages, the City later denied a zoning variance that would have allowed W.E.B. to rebuild on the property.[1]

In May 1995, W.E.B. filed suit against the City under the Texas Tort Claims Act, alleging that the City negligently ordered the use of motorized equipment to demolish the building at 3500 Pera prior to being legally allowed to do so. The City filed a general denial, pleaded the affirmative defense of governmental immunity, and counterclaimed for the cost of demolishing the building and for attorney's fees. After a jury trial, the trial court entered judgment for plaintiff W.E.B. This appeal follows.

---

1. The building at 3500 Pera was built in the 1940's and fronted directly on the sidewalk. Any new building on the narrow lot would have to comply with current zoning regulations that do not allow a building to abut the sidewalk.

## Immunity

In its first point, the City alleges error in the trial court's refusal to grant its motions for instructed verdict and judgment notwithstanding the verdict because the evidence was legally and factually insufficient to overcome the City's sovereign immunity. Under the doctrine of sovereign immunity, the State and subdivisions thereof are not liable for the negligence of employees absent constitutional or statutory provision for liability. *University of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994); *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex.1976). Section 101.021 of the Tort Claims Act sets out a limited waiver of the immunity. That section provides that a governmental unit is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. TEX. CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

Thus, the City remains immune from suit unless the plaintiff pleads and proves the existence of liability under Section 101.021. In this case, the plaintiffs pleaded that "[t]he City is liable for the damages resulting from the above actions and such damages may be recovered against CITY pursuant to the Texas Civil Practice and Remedies Code, Sections 101.021(1)(A), § 101.0215(a), and § 101.056 since the acts were done with the use of a motor-driven vehicle or motor-driven equipment, involved the negligent performance of policy implementation, and/or involved the implementation of building codes

and inspection, or zoning, planning and plat approval."

The determination of whether there has been a statutory waiver of immunity is a question of law for the court to decide based on the facts of the case. *Hatley v. Kassen*, 859 S.W.2d 367, 376 (Tex.App.—Dallas 1992), *affirmed in part, reversed in part on other grounds*, 887 S.W.2d 4 (Tex.1994); *Quinn v. Memorial Medical Ctr.*, 764 S.W.2d 915, 917 (Tex.App.—Corpus Christi 1989, no writ), *see also Barker v. City of Galveston*, 907 S.W.2d 879, 887 (Tex.App.—Houston [1st Dist.] 1995, writ denied)(whether city's actions fall within discretionary power so that waiver of immunity under Tort Claims Act does not apply is question of law for the court). Legal conclusions of a trial court are always reviewable on appeal. Trial court findings on the law are given no particular deference. Rather, as the final arbiter of the law, the appellate court has the power and the duty to independently evaluate the legal determinations of the trial court. *Sears, Roebuck and Co. v. Nichols*, 819 S.W.2d 900, 903 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied).

### 1. The City's Theories

The City argues that its immunity was not waived under the Act for two reasons. First, the City maintains that there was no negligence in the use of the motor-driven equipment since the operators of the equipment were following orders to demolish the structure and therefore acted intentionally. Second, the City contends that negligence, if any, occurred in the discretionary formulation of the order to demolish the structure. Thus, the City argues, even if there was negligent use of motor-driven equipment sufficient to constitute a waiver of sovereign immunity, the employee who framed the order would enjoy official immunity. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994)(government employees entitled to official immunity when performing discretionary duties in good faith within scope of authority). Since the City is entitled to assert any defense its employees would have to liability, the City maintains

that it cannot be liable for the negligently formulated order. *See DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995)(county not liable for negligence of its employee where acts of employee would be covered by official immunity).

## 2. Operation or Use of Motor–Driven Equipment

■ The relevant portion of the Act provides for waiver if two elements are satisfied: 1) the negligence of an employee acting within the scope of his or her employment proximately causes damages; and 2) the damages arise from the use or operation of the motor-driven equipment. TEX.CIV.PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). It is undisputed that the damages in this case "arise" from the use of motor-driven equipment because it is undisputed that the City used motor-driven equipment to demolish the building. Several City witnesses testified that city vehicles and equipment operated by city employees were used in the demolition. The City contends that there is no waiver of sovereign immunity because there was no negligent use of motor-driven equipment. Rather, it appears that the motor-driven demolition equipment was operated quite efficiently on this occasion.

We do not agree with the City that the negligence must be perpetrated in the actual physical control of the motor-driven equipment for waiver to occur. The Act merely requires that the damages "arise" from use of a vehicle, and that there be proximate causation between the negligence and the injury. The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 789 (Tex.App.—El Paso 1996, writ denied). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.* Thus, the negligence of government employees must have been a substantial factor in bringing about the injury.

We find that in this case, the negligence of street operations supervisor Doblado in or-

dering the motor-driven equipment to demolish the building without checking the obvious conflict in the demolition order, and in failing to follow City policy dictating that the "Demolition Clearances" rather than the "Directive Issued" section of the order controls, was a substantial factor in bringing about the injury even though Doblado did not physically operate the equipment. The first element under the Act is therefore satisfied. *See Harris County Hospital District v. Estrada*, 872 S.W.2d 759, 763 (Tex.App.—Houston [1st Dist.] 1993, writ denied)(negligence of nurses in failing to follow policy by checking patient records resulting in dispensation of sulfa drug to allergic patient resulting in patient death sufficient to waive immunity for use of tangible personal property). As we have already stated, it is undisputed that the damage arose from the use of the motor-driven equipment. Accordingly, we reject the City's first argument against waiver of immunity.

## 3. Qualified Immunity Based on Discretionary Acts of Employees

■ Next, the City argues that any negligence arose from discretionary acts of City employees deciding to demolish, and formulating the order directing demolition of, a dangerous building. Government employees are entitled to official immunity in the performance of discretionary duties performed in good faith within the scope of their authority. *Chambers*, 883 S.W.2d at 653. A discretionary act is one that requires personal deliberation, decision, and judgment. *Chambers*, 883 S.W.2d at 654. Thus, if the negligence causing an injury lies in the formulating of policy, or, as in this case, the discretionary formulation of an order, the government remains immune from liability. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex.1995). If, however, an officer or employee acts negligently in carrying out that policy or order, government liability may exist under the Act. *Id.*

■ In this case, we find negligence in Doblado's non-discretionary implementation of the demolition order. Doblado testified that as a street operations supervisor, he follows the demolition orders he receives from the "director of the streets." His duty

is to follow the orders, not formulate them. Without a directive, he does nothing. Doblado admitted that he noticed the discrepancy in the demolition dates on the order; he nevertheless demolished the building without checking the discrepancy. Moreover, the 1993 date upon which Doblado relied did not appear in that portion of the order which is controlling in the event of discrepancy. The correct 1994 date appeared in the controlling portion of the order. The evidence thus establishes that Doblado, acting in a non-discretionary capacity, carried out the demolition order contrary to City policy. Accordingly, immunity may be waived for his actions. *See State v. Terrell*, 588 S.W.2d 784, 787–88 (Tex.1979)(highway patrolman's driving decisions outside scope of policy directives not covered by immunity); *City of Waco v. Hester*, 805 S.W.2d 807, 812–13 (Tex. App.—Waco 1990, writ denied)(failing to follow city policy requiring segregation of certain inmates waived immunity because acts constituted negligent implementation of policy rather than formulation). We reject the City's second attack on waiver.

### 4. Conclusion: Sovereign Immunity

Based on our discussion above, we find that the trial court correctly applied the law of sovereign immunity to the facts of this case. Accordingly, we overrule the City's first point of error.

#### *Damages*

In its second and third points of error, the City complains that the trial court erred in granting W.E.B.'s motion to disregard jury findings and increasing the amount of damages. We agree.

The jury was instructed that if they found that the City's negligence proximately caused damage to the plaintiffs, the measure of damages was to be the difference between the fair market value of the property immediately prior to the demolition and the fair market value of the property after its demolition. The jury returned a finding of $6,000 in damages. In response to the plaintiff's motion to disregard this finding, the trial court found that there was no evidence of probative force to sustain the jury's finding

of damages in the amount of $6,000, but that the undisputed evidence demonstrated that the difference in market value between the value of the building immediately prior to and after demolition was $18,640.

The propriety of a trial court disregarding a jury finding raises a "no evidence" point of error. The trial court may disregard the jury's finding only if it has no support in the evidence. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982); *Tubb v. Bartlett*, 862 S.W.2d 740, 744–45 (Tex.App.—El Paso 1993, writ denied); Tex.R.Civ.P. 301. The jury's determination must be sustained even if the great weight and preponderance of the evidence is to the contrary. *Scharer v. John's Cars, Inc.*, 776 S.W.2d 228, 230–31 (Tex.App.—El Paso 1989, writ denied). We review the evidence in the light most favorable to the jury finding, considering only the evidence and inferences tending to support that finding. *Dowling*, 631 S.W.2d at 728; *Tubb*, 862 S.W.2d at 745; *Boatright v. Texas American Title Co.*, 790 S.W.2d 722, 728 (Tex.App.—El Paso 1990, writ dism'd), *citing Dodd v. Texas Farm Products Company*, 576 S.W.2d 812 (Tex.1979). If we find more than a scintilla of evidence to support the jury's determination of the issue, we must reinstate that portion of the jury's verdict that was disregarded and enter an appropriate judgment. *Dowling*, 631 S.W.2d at 728; *James v. Vigilant Ins. Co.*, 674 S.W.2d 925, 926 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.); *Tubb*, 862 S.W.2d at 744–45.

In support of the judgment, W.E.B. argues that in determining damages, the jury is constrained to a range of value established by expert opinion. W.E.B. relies on *Callejo v. Brazos Electric Power Cooperative, Inc.*, 755 S.W.2d 73 (Tex.1988) and *State v. Huffstutler*, 871 S.W.2d 955, 959 (Tex.App.—Austin 1994, no writ) for this proposition. These cases both involved determining the diminution in value of property following partial condemnation where the only evidence of value was expert testimony. In *Callejo*, the Supreme Court held that jurors cannot "leap entirely outside of the evidence in answering any question submitted to them," but they are not bound to accept expert testimony. *Callejo*, 755 S.W.2d at 75. In addition, this court, in *Parallax Corp., N.V. v. City of El*

*Paso,* 910 S.W.2d 86 (Tex.App.—El Paso 1995, writ denied) distinguished *Callejo,* holding that where there is evidence other than expert testimony on which the jury could compute value, the jury is not bound by expert testimony. *Id.* at 92.

We find at least some evidence to support the jury's finding in this case. Relying on photographs of the property and a report from Fishkin Engineering commissioned by W.E.B. discussing the feasibility of rehabilitating the structure, W.E.B.'s expert witness Steve Simon, estimated the pre-demolition value of the land at $6,800 and the structure at $38,210. Mr. Simon also estimated that the property would have a value of $61,000 if it were made habitable and brought into compliance with city building codes. Mr. Simon viewed the property after demolition and reviewed the evaluation with the appraisal district and determined the postdemolition value to be $1,360.

Although the City did not present a pre-demolition appraisal of the property, it did introduce into evidence two estimates of the cost of renovating the building at 3500 Pera. Luis Rico, a remodeling contractor, estimated the cost of rehabilitating the building at $70,000. He relied on the photographs provided by the City and the Fishkin report in analyzing the cost of renovation. Mr. Rico explained that his estimation contemplated completely rehabilitating the structure, which involved replacing all existing electrical wiring, plumbing, floors, windows, doors, and interior and exterior stucco. He admitted that repairs limited to bringing the building up to code standards would cost substantially less. Bradley Roe, a contractor and engineer, estimated the cost of rehabilitation at approximately $63,000. Based on the cost estimates of Mr. Rico and Mr. Roe, the City asked real estate developer Curtis Sellers to do a feasibility study on renovating the building. He concluded that the cost of renovation would be greater than the estimated value of a renovated habitable building, and thus the structure on the property had a negative value.

Under these facts, it was not unreasonable for the jury to accept the City's evidence that the structure as it stood prior to demolition had little or no value. Nor was it unreasonable for the jury to base its damage award on a "negative value" coupled with the uncontroverted evidence of the devaluation of the land due to the City's refusal to grant a zoning variance. Moreover, although there is conflicting evidence on the value of the property before the destruction of the building, both parties appear to accept the $6,800 pre-demolition land value. There was no evidence offered to contradict the post-demolition valuation of $1,360. Thus, if the jury accepted the City's evidence of negative value for the structure itself, there was evidence from which they might reasonably have concluded W.E.B. was entitled only to $6,000 for diminution in the value of the land.

Based on our review, there is evidence from which the jury could conclude that W.E.B. suffered damages in the amount of $6,000. Finding that there is some evidence to support the jury's damage determination, the trial court erred in disregarding the jury's answer to question number two and entering judgment against the City in the amount of $18,640. Accordingly, we sustain the City's second and third points of error.

### CONCLUSION

We affirm the jury verdict on the City's negligence. We reverse the trial court's judgment as to damages, vacate the award of $18,640, and reinstate that portion of the jury's verdict that was disregarded and enter judgment for W.E.B. in the amount of $6,000.