Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JOE G. SEPULVEDA and ADRIAN                  )
RAMIREZ, INDIVIDUALLY, AND AS           )
NEXT FRIEND OF ADRIAN RAMIREZ, JR., )
AND REHANNE RAMIREZ,                            ) 
MINOR CHILDREN,                                         )                  No. 08-03-00514-CV
)
                                    Appellants,                       )                             Appeal from
)
v.                                                                          )                  346th District Court
)
THE COUNTY OF EL PASO, TEXAS, and      )                  of El Paso County, Texas
SHERIFF LEO SAMANIEGO,                      )
INDIVIDUALLY AND IN HIS OFFICIAL       )                  (TC# 2003-5229)
CAPACITY,                                                        )
)
                                    Appellees.                        )

O P I N I O N

            Joe G. Sepulveda and Adrian Ramirez, Individually and as Next Friend of Adrian Ramirez,
Jr. and Rehanne Ramirez, Minor Children, appeal from the trial court’s order granting a plea to the
jurisdiction asserted by the County of El Paso and Sheriff Leo Samaniego. We affirm in part and
reverse and remand in part.
FACTUAL SUMMARY
            In September or October 2000, employees of Jobe Concrete reported to the El Paso County
Sheriff’s Department that vehicles were using Cherrington Road to drag race. Cherrington Road is
a paved roadway leading to the entrance of Jobe’s plant on the far east side of El Paso. The portion
of Cherrington which extends beyond Jobe’s plant is an unpaved road used by Jobe’s vehicles. Jobe
complained that the drag racing was hindering its business operations because the vehicles would
line up “two by two” and would not let anyone pass. 
            Cherrington Road was dedicated for public use by the developer in 1973 but it has never been
placed in the county road system. Consequently, the County has not assumed the responsibility for
maintaining the road. Jobe paved a portion of Cherrington Road in order to facilitate entrance into
the plant. Jobe also placed “no drag racing” signs along the roadway.


 Unpaved portions of
Cherrington Road are still used by Jobe’s company trucks. 
            On December 13, 2000, Deputy Jorge Andujo spoke with Jobe’s production assistant
manager, Victor Garcia, about the drag-racing problem. Andujo knew from prior experience that
the drag racers escaped the deputies’ attempts to stop them by driving on the dirt roads at high rates
of speed, posing a danger to themselves and the deputies. In order to contain the drag racers and
prevent them from escaping from the deputies on the unpaved portion of the road, Andujo asked
Garcia if Jobe would construct a berm fifty feet from the end of the paved portion of the roadway. 
Garcia told Andujo that he would first have to check with Jobe’s vice president, Irene Eperson. 
Upon receiving approval from Eperson, Garcia told Andujo that they would build the berm that
afternoon and then remove it the following morning. Andujo maintains that he did not specify the
details of how the berm would be built by Jobe, but Garcia recalled that Andujo told him to build
the berm across the entire road so that no one could go through onto the unpaved road. No one from
the Sheriff’s Department was present when Jobe constructed the berm. Garcia instructed a Jobe
employee to build a small sand berm using one of Jobe’s front end loaders. He told the employee
to build it no higher than two feet but there is evidence that the berm was three to five feet in height,
or perhaps even taller. 
            At approximately 8 p.m. on December 13, 2000, Deputy Andujo and three other deputies
arrived on Cherrington Road and saw numerous vehicles. Although the deputies had activated their
emergency lights and sirens, several vehicles fled at a high rate of speed on Cherrington. Andujo
and the other deputies did not give chase because the road was blocked by the berm. Andujo
watched several vehicles apply their brakes at the end of the road and turn around. But three vehicles
did not turn around. Two of them turned into Jobe’s employee parking lot in an effort to hide from
the deputies. The third vehicle, a small, dark-colored four-wheel-drive truck, escaped. Andujo and
the other deputies did not see any vehicles collide with the berm.
            The following afternoon, Adrian Ramirez filed an accident report with the Sheriff’s
Department. While driving his black Toyota four-wheel-drive truck on Cherrington the previous
evening sometime between 8 and 9:30 p.m., he collided with the dirt and rock berm which he
estimated to be four to six feet tall.


 The collision caused extensive damage to the front end of the
vehicle. Ramirez claimed to have been driving 30 miles per hour at the time of the collision. 
Present in the truck with Ramirez were his two minor children and a neighbor, Joe Sepulveda. 
            Ramirez and the other plaintiffs filed suit against Jobe,


 the County, and Sheriff Samaniego,
seeking to recover damages for injuries received in the accident. Their pleadings allege that the
County defendants


 directed Jobe to construct the barricade across the roadway and were negligent
in failing to warn persons traveling on the road about the obstruction and in failing to inspect and
correct a dangerous condition. Additionally, they allege that the County engaged in negligent
supervision. The County filed a plea to the jurisdiction, alleging that sovereign immunity had not
been waived. The trial court granted the plea to the jurisdiction. 
PLEA TO THE JURISDICTION
            In Issue One,


 Appellants assert that the trial court erred in granting the plea to the
jurisdiction because their petition states a claim for which sovereign immunity is waived under the
Texas Tort Claims Act.
Standard of Review
            When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter
jurisdiction, and dismissal with prejudice is proper. City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d
750, 752 (Tex.App.--Austin 1998, no pet.). A plea to the jurisdiction is a dilatory plea by which a
party contests the trial court’s authority to determine the subject matter of the cause of action. City
of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App.--Fort Worth 1999, pet.dism’d w.o.j.); State v.
Benavides, 772 S.W.2d 271, 273 (Tex.App.--Corpus Christi 1989, writ denied). The plaintiff has
the burden to allege facts affirmatively demonstrating that the trial court has subject matter
jurisdiction. Texas Association of Business v. Texas Air Control Board, 852 S.W.2d 440, 446 (Tex.
1993); City of Saginaw, 996 S.W.2d at 2. Subject matter jurisdiction is a legal question which we
review de novo. City of Saginaw, 996 S.W.2d at 2; Texas Dept. of Health v. Doe, 994 S.W.2d 890,
892 (Tex.App.--Austin 1999, pet. dism’d by agr.). We consider the allegations in the petition and
accept them as true. See City of Saginaw, 996 S.W.2d at 2-3. The plaintiff’s jurisdictional pleadings
are to be construed liberally in the plaintiff’s favor and we look to the pleader’s intent. See Texas
Association of Business, 852 S.W.2d at 446. A court deciding a plea to the jurisdiction, however,
is not required to look solely to the pleadings, but may consider evidence and must do so when
necessary to resolve the jurisdictional issues raised. Bland Independent School District v. Blue, 34
S.W.3d 547, 555 (Tex. 2000); see County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). 
The court should confine itself to the evidence relevant to the jurisdictional issue. Blue, 34 S.W.3d
at 555.
Causes of Action Against Sheriff Samaniego
            Before addressing the merits of the issues raised on appeal, we note that Appellants have not
specifically addressed the dismissal of their causes of action against Sheriff Samaniego. Sheriff
Samaniego is entitled to derivative immunity pursuant to Section 101.106 of the Texas Civil Practice
and Remedies Code.


 See Harris County v. Sykes, 136 S.W.3d 635, 640 (Tex. 2004). The purpose
of Section 101.106 is to protect employees of a governmental unit from liability when a judgment
against or a settlement from the government employer has been obtained pursuant to a claim under
Chapter 101 of the Texas Tort Claims Act. Id. In Sykes, the Supreme Court held that a dismissal
on a plea to the jurisdiction is a judgment for purposes of Section 101.106. Id. With respect to those
claims against the County which were properly dismissed by the trial court, Sheriff Samaniego is
entitled to derivative immunity under Section 101.106 of the Texas Tort Claims Act.
Operation or Use of Motor-Driven Equipment
            In its plea to the jurisdiction, the County contended that Appellants’ injuries were not caused
by a governmental employee’s operation or use of a motor-driven vehicle or equipment, but rather
were caused by Adrian Ramirez’s operation of his own motor vehicle. Asserting that the County and
Sheriff’s Department, through Deputy Andujo, directed Jobe to build a dirt barricade across
Cherrington Road, Appellants first argue that their claim falls within Section 101.021(1). Appellants
acknowledge that Deputy Andujo did not personally operate or use motor-driven equipment, but
they argue that he negligently exercised control over the Jobe employee who used the front-end
loader to build the berm. 
            A county is a governmental unit protected by the doctrine of sovereign immunity. Catalina
Development, Inc. v. County of El Paso, 121 S.W.3d 704, 705 (Tex. 2003). Generally, a
governmental unit possesses both immunity from liability and immunity from suit. Id. The
governmental unit waives immunity from suit only through its express consent. Id. Section
101.021(1) of the Texas Tort Claims Act provides that a governmental unit is liable for:
(1) property damage, personal injury, and death proximately caused by the wrongful
act or omission or the negligence of an employee acting within his scope of
employment if: 
 
(A) the property damage, personal injury, or death arises from the operation
or use of a motor-driven vehicle or motor-driven equipment; and 
 
(B) the employee would be personally liable to the claimant according to
Texas law.

Tex.Civ.Prac.&Rem.Code Ann. § 101.021 (Vernon 1997).
            The waiver of immunity provided by Section 101.021 is a limited one. Under Section
101.021(1), a governmental unit is not liable for a personal injury caused by a negligent employee
unless the injury “arises from the operation or use of a motor-driven vehicle or motor-driven
equipment.” Id. The phrase “arises from” requires a nexus between the injury negligently caused
by a governmental employee and operation or use of a motor-driven vehicle or equipment. LeLeaux
v. Hamshire-Fannett Independent School District, 835 S.W.2d 49, 51 (Tex. 1992). In LeLeaux, a
high school band student jumped out of the rear emergency door of a parked school bus to retrieve
a pillow that had fallen. The student bumped her head when she re-entered through the same door. 
The bus driver was not present when these events took place. After the bus driver entered the bus
and discovered that the back door was open, he asked the student to close it and she fell to the
ground. The student sued the school district, alleging that the school district was negligent in its
operation and use of school buses because of its practice of regularly loading and unloading band
students and their instruments through the emergency doors. She made the same allegation against
the bus driver. The trial court granted summary judgment for the school district on the ground of
sovereign immunity. The Supreme Court held that while the statute does not specify whose
operation or use is necessary--the employee’s, the person who suffers injury, or some third party--the
more plausible reading is that the required operation or use is that of the employee. Id. This
requirement is consistent with the limited waiver of sovereign immunity provided by the Tort Claims
Act. Id. Because the injury did not result from an employee’s operation or use of the bus, the court
held that sovereign immunity was not waived. Id.
            The Beaumont Court of Appeals followed LeLeaux in Tarkington Independent School
District v. Aiken, 67 S.W.3d 319 (Tex.App.--Beaumont 2002, no pet.). There, a participant in a
summer job training program sued the school district for injuries he received on school property
while riding on the tailgate of a privately-owned truck driven by another program participant. The
program participants had been instructed by a school district employee to move desks from one
building to another, but they had not been told to use the truck for the task. The plaintiff’s suit
alleged negligent acts and/or omissions relating to improper supervision, direction, and control of
non-employees and the improper training of school district employees. He also alleged that his
injuries arose from the operation or use of a motor-driven vehicle. However, he did not allege that
a school district employee operated or used the vehicle. The court held sovereign immunity was not
waived because the allegations of negligence were not related to an employee’s negligent use or
operation of a vehicle. Id. at 326.
            Appellants cite four cases in support of their argument that sovereign immunity is waived
under Section 101.021(1). In Sem v. State, 821 S.W.2d 411 (Tex.App.--Ft. Worth 1991, no pet.),
a decision which pre-dates LeLeaux, the Texas State Department of Highways and Public
Transportation entered in a contract with Tex-Sun Construction Company to pick up trash along state
highways. The plaintiffs alleged that the State had inspectors on the job daily and exercised the right
to control the details of the work performed by the contractor. A Tex-Sun employee was killed when
struck by a car while attempting to post a warning sign along a freeway. His children sued the driver
of the car, the contractor, and the State. Plaintiffs alleged that the defendants negligently used
tangible personal property and operated or used a motor-driven vehicle or equipment which did not
have adequate warning devices. With respect to the State, they specifically alleged that the State was
negligent in its right of control over use and placement of the signs and other warning devices,
including the warning device on the independent contractor’s vehicles. The trial court granted the
State’s motion for summary judgment based on sovereign immunity. Relying on Section 414 of the
Restatement (Second) of Torts,


 the Fort Worth Court of Appeals found that summary judgment was
improperly granted because there was a fact issue whether the State retained and exercised sufficient
control over the manner in which the independent contractor performed its work even though it did
not retain the degree of control which would subject it to liability as a master. Id. at 415. Certain
provisions in the contract indicated that the State retained the power to forbid work from being done
in a dangerous manner. Id. Holding that the Tort Claims Act must be liberally construed, the court
of appeals also rejected the State’s argument that sovereign immunity is not waived under Section
101.021 because it did not own or use the tangible personal property or vehicle in question. Id. at
415-16. The court held that the Tort Claims Act does not require that the State own or directly use
the vehicle or property that causes death, and therefore, immunity is waived in circumstances where
the State has assumed responsibility for proper use of tangible personal property and negligent
exercise of this responsibility by its employee results in death. Id. at 416.
            We turn next to County of Galveston v. Morgan, 882 S.W.2d 485 (Tex.App.--Houston [14th
Dist.] 1994, writ denied). Morgan, the employee of an independent contractor, was injured when
he fell from the bed of a truck while delivering road resurfacing material to repair a county road. 
Galveston County supplied spotters signaled the truck drivers when to move forward and when to
stop. One of the spotters moved the truck too close to a power line and Morgan climbed into the bed
of the truck to determine how close it was to the power line. He received an electric shock which
knocked him to the ground. The jury found Morgan and the county equally negligent. On appeal,
the county challenged the legal and factual sufficiency of the evidence to support a finding that the
accident arose from a county employee’s use or operation of a motor driven vehicle. The county
argued that the vehicle was not a county truck and the driver was not a county employee. The court
of appeals rejected these arguments and found a waiver of immunity because the county spotters
“used” or “operated” the trucks by controlling their movements. Id. at 490. The court distinguished
LeLeaux on the ground that while the bus was not in use and merely provided the setting for the
student’s injury, the truck in the instant case was in use at the time of the accident. Id. at 490-91.
            In City of El Campo v. Rubio, 980 S.W.2d 943 (Tex.App.--Corpus Christi 1998, pet. dism’d
w.o.j.), the Corpus Christi Court of Appeals followed Morgan. In that case, a police officer allegedly
ordered an unlicensed passenger to operate a motor vehicle following the driver’s arrest. The
passenger, in accordance with the officer’s order, followed the patrol car onto the highway and was
struck by another vehicle. The court of appeals found that immunity was waived because the officer
“used” or “operated” the vehicle by exercising control over it. Id. at 945-46.
            And finally, in City of El Paso v. W.E.B. Investments, 950 S.W.2d 166 (Tex.App.--El Paso
1997, pet. denied), the City of El Paso’s street operations supervisor mistakenly ordered a third
party’s motor-driven equipment to demolish a condemned building before the time had expired for
repairs to be made. This court found sovereign immunity was waived even though a governmental
employee did not personally operate the motor-driven equipment. Id. at 170.
            The County insists that the foregoing cases conflict with LeLeaux and should not be
followed. We believe that the holding can be reconciled. The Supreme Court did not hold in
LeLeaux that the vehicle had to be driven by a governmental employee; it held only that a
governmental employee “use” or “operate” the vehicle. Rubio, 980 S.W.2d at 946. “Operation”
refers to a “doing or performing of a practical work” and “use” means “to put or bring into action
or service; to employ for or apply to a given purpose.” LeLeaux, 835 S.W.2d at 51. In LeLeaux, the
bus was not in use or operation at the time of the accident and was nothing more than the place
where the student happened to injure herself. Id. In Morgan, Rubio, and W.E.B. Investments,
however, there were allegations and evidence that a governmental employee “used” or “operated”
a vehicle by directly controlling the actions of the actual operator. In Sem, the plaintiffs alleged that
the State retained and exercised control over the warning devices used by the independent contractor,
including those on its vehicles, and that Sem’s death occurred because the vehicle he was using did
not have the proper omnidirectional warning device. Thus, the plaintiffs sufficiently alleged that the
State “used” or “operated” a motor-driven vehicle or used tangible personal property.
            The instant case is distinguishable from Sem, Morgan, Rubio, and W.E.B. Investments. It is
undisputed that a county employee did not personally operate or use a motor-driven vehicle or
equipment used to construct the berm. Appellants did not plead and there is no evidence showing
that the County retained any degree of control over Jobe’s construction of the berm. To the contrary,
the evidence heard by the trial court established that the County did not retain or exercise any control
over Jobe with respect to the construction of the berm. Thus, it cannot be said that an employee
“used” or “operated” the motor-driven equipment used to build the berm, and therefore, sovereign
immunity is not waived under Section 101.021(1).
Condition or Use of Tangible Personal Property
            Appellants generally allege that sovereign immunity is waived under Section 101.021(2). 
Pursuant to this section, a governmental unit is liable for personal injury and death caused by a
condition of real property or a condition or use of tangible personal property if the governmental unit
would, were it a private person, be liable to the claimant according to Texas law. See
Tex.Civ.Prac.&Rem.Code Ann. § 101.021(2). To state an actionable claim under Section
101.021(2) based upon the “condition” of tangible personal property, it is sufficient to allege that
defective property contributed to the injury. Salcedo v. El Paso Hospital District, 659 S.W.2d 30,
32 (Tex. 1983); Gonzales v. City of El Paso, 978 S.W.2d 619, 623 (Tex.App.--El Paso 1998, no
pet.). Appellants’ pleadings do not contain any allegations regarding defective personal property and
there is no evidence to support such a claim.
            To state a claim under the Act based upon the use or misuse of non-defective tangible
personal property, a plaintiff must allege (1) that the property was used or misused by a
governmental employee acting within the scope of his or her employment and (2) that the use or
misuse of the property was a contributing factor to the injury. Salcedo, 659 S.W.2d at 32; Gonzales,
978 S.W.2d at 623. The negligence of the government employee must be the proximate cause of the
injury and must involve a use or misuse of tangible personal property under circumstances where
there would be private liability. Salcedo, 659 S.W.2d at 32; Gonzales, 978 S.W.2d at 623. The
property itself need not be the instrumentality of the alleged harm, but it must have been a
contributing factor to the harm. Gonzales, 978 S.W.2d at 623; see Salcedo, 659 S.W.2d at 32. The
Act does not provide for liability based upon a non-use of property. Kassen v. Hatley, 887 S.W.2d
4, 14 (Tex. 1994).
            While Appellants generally assert on appeal that their pleadings state a cause of action for
use of tangible personal property, they do not identify the personal property in either their pleadings
or briefing. Having reviewed the pleadings and evidence adduced at the hearing, we cannot conclude
that Appellants have either alleged or demonstrated that their injuries resulted from the use or misuse
of tangible personal property. Issue One is overruled.
Premises Defect
            In Issue Two, Appellants allege that sovereign immunity is waived because the berm
constitutes both a premises defect and a special defect. The County contends on appeal, as it did in
the trial court, that sovereign immunity is not waived under the Tort Claims Act because the County
does not own Cherrington Road and it has no duty to maintain the road.
            Liability for premises defects is implied under Section 101.021(2) because premises defects
arise from a condition existing on real property. City of Midland v. Sullivan, 33 S.W.3d 1, 6
(Tex.App.--El Paso 2000, pet. dism’d w.o.j.); Lamar University v. Doe, 971 S.W.2d 191, 195
(Tex.App.--Beaumont 1998, no pet.). With respect to ordinary premises defects, however, the Act
specifically limits the governmental duty owed a claimant to “the duty that a private person owes to
a licensee on private property.” County of Cameron v. Brown, 80 S.W.3d 549, 554 (Tex. 2002),
quoting Tex.Civ.Prac.&Rem.Code Ann. § 101.022(a). Thus, a governmental unit may be liable
for an ordinary premises defect only if a private person would be liable to a licensee under the same
circumstances. Brown, 80 S.W.3d at 554.
            A property possessor must not injure a licensee by willful, wanton, or grossly negligent
conduct, and must use ordinary care either to warn a licensee of a condition that presents an
unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to
make the condition reasonably safe. Brown, 80 S.W.3d at 554; State Department of Highways &
Public Transportation v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). A licensee asserting a
premises-defect claim generally must show that the defendant possessed--that is, owned, occupied,
or controlled--the premises where the injury occurred. Brown, 80 S.W.3d at 554. A
premises-liability defendant may be held liable for a dangerous condition on the property if it
“assum[ed] control over and responsibility for the premises,” even if it did not own or physically
occupy the property. Brown, 80 S.W.3d at 556, quoting City of Denton v. Page, 701 S.W.2d 831,
835 (Tex. 1986). The relevant inquiry is whether the defendant assumed sufficient control over the
part of the premises that presented the alleged danger so that the defendant had the responsibility to
remedy it. Brown, 80 S.W.3d at 556. Additionally, a private person who has created the dangerous
condition may be liable even though not in control of the premises at the time of injury. Page, 701
S.W.2d at 835.
            The evidence revealed that Cherrington Road is a dedicated public road but it has not been
placed in the county road system and the County has not assumed a duty to maintain it. But the
evidence also shows that the County, through its employee Deputy Andujo, requested


 that Jobe
construct a dirt barricade across the roadway in order to assist the Sheriff’s Department in
apprehending the drag racers who were interfering with Jobe’s business operations. Giving a liberal
construction to the pleadings and taking the relevant evidence in favor of the Appellants, there is at
least some evidence that the County created the dangerous condition, and therefore, it would have
the responsibility to either warn of the danger or remedy it. The trial court erred in finding that
sovereign immunity is not waived under Section 101.022(a).
Special Defect
            Where there is a special defect, the governmental entity has the same duty to warn that one
owes an invitee. Payne, 838 S.W.2d at 237; Tex.Civ.Prac.&Rem.Code Ann. § 101.022(b)(Vernon
1997).


 That duty requires an owner or occupier to use ordinary care to reduce or eliminate an
unreasonable risk of harm created by a premises condition of which the owner or occupier is or
reasonably should be aware. Id. Where a special defect exists, it is the duty of the governmental unit
that owns or controls a roadway to warn of the defect even though that governmental unit did not
create the defect. Harris County v. Eaton, 573 S.W.2d 177, 179-80 (Tex. 1978). 
            The County does not allege that the temporary dirt berm or barricade, which plainly
obstructed the roadway on the evening of December 13, 2000, was not a special defect. Rather, it
argues that it did not own or control the roadway, and therefore, it did not have a duty to warn of the
defect. As noted above, the evidence reflects that the County did not own or have a duty to maintain
Cherrington Road. But there is evidence indicating that the County exercised control over
Cherrington Road on the date in question by ordering Jobe to construct the barricade blocking the
roadway. We have found no cases addressing similar facts, but we conclude that ordering the
placement of a barricade on a public roadway constitutes the type of control which would subject
a governmental unit to a duty to warn. For the foregoing reasons, Issue Two is sustained. 
ALLOWING PLAINTIFFS TO REPLEAD
            Finally, in Issue Three, Appellants argue that the trial court should have given them an
opportunity to re-plead. We will address this contention as it applies to Issue One. As a general rule,
a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional
defect. Sykes, 136 S.W.3d at 639; see Brown, 80 S.W.3d a 555 (when a plaintiff fails to plead facts
that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the
opportunity to amend). On the other hand, dismissal with prejudice is appropriate when the
pleadings affirmatively negate the existence of jurisdiction because of the sovereign immunity bar. 
Sykes, 136 S.W.3d at 639; Brown, 80 S.W.3d at 555. Further, if a plaintiff has been provided a
reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the
plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity,
then the trial court should dismiss the plaintiff's action with prejudice, because a plaintiff should not
be permitted to relitigate jurisdiction once that issue has been finally determined. Sykes, 136 S.W.3d
at 639. 
            Appellants filed their third amended petition on May 28, 2002 and the County defendants
filed their plea to the jurisdiction on August 30, 2002. Almost eleven months later, Appellants filed
their response to the plea to the jurisdiction on July 14, 2003, but they did not amend their pleadings. 
The trial court granted the plea to the jurisdiction on October 27, 2003. Appellants had ample
opportunity to amend their pleadings after the County filed its plea to the jurisdiction, but did not
do so. The evidence considered by the trial court in connection with those claims based on operation
or use of a motor-driven vehicle or equipment and use of tangible personal property indicates that
the claims are barred by sovereign immunity. For these reasons, the trial court did not err in granting
the plea to the jurisdiction without giving Appellants an opportunity to re-plead. Issue Three is
overruled.
            Having overruled Issues One and Three, we affirm that portion of the order granting the plea
to the jurisdiction with respect to those claims based on operation or use of a motor-driven vehicle
or equipment under Section 101.021(1), and condition or use of tangible personal property under
Section 101.021(2). Having sustained Issue Two, we reverse that portion of the order granting the
plea to the jurisdiction with respect to the premises defect and special defect claims. This cause is
remanded to the trial court for further proceedings consistent with this opinion.


April 12, 2005                                                             
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.