Joe G. SEPULVEDA and Adrian Ramirez, Individually, and as Next Friend of Adrian Ramirez, Jr., and Rehanne Ramirez, Minor Children, Appellants,

v.

The COUNTY OF EL PASO, Texas, and Sheriff Leo Samaniego, Individually and in his Official Capacity, Appellees.

No. 08–03–00514–CV.

Court of Appeals of Texas, El Paso.

April 12, 2005.

Rehearing Overruled June 8, 2005.

---

James B. Kennedy Jr., Gage & Kennedy, L.L.P., El Paso, for Appellants.

Maria A. Salas–Mendoza, Asst. County Atty., El Paso, for Appellees.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Joe G. Sepulveda and Adrian Ramirez, Individually and as Next Friend of Adrian Ramirez, Jr. and Rehanne Ramirez, Minor Children, appeal from the trial court's order granting a plea to the jurisdiction asserted by the County of El Paso and Sheriff Leo Samaniego. We affirm in part and reverse and remand in part.

### FACTUAL SUMMARY

In September or October 2000, employees of Jobe Concrete reported to the El Paso County Sheriff's Department that vehicles were using Cherrington Road to drag race. Cherrington Road is a paved roadway leading to the entrance of Jobe's plant on the far east side of El Paso. The portion of Cherrington which extends beyond Jobe's plant is an unpaved road used by Jobe's vehicles. Jobe complained that the drag racing was hindering its business operations because the vehicles would line

up "two by two" and would not let anyone pass.

Cherrington Road was dedicated for public use by the developer in 1973 but it has never been placed in the county road system. Consequently, the County has not assumed the responsibility for maintaining the road. Jobe paved a portion of Cherrington Road in order to facilitate entrance into the plant. Jobe also placed "no drag racing" signs along the roadway.[1] Unpaved portions of Cherrington Road are still used by Jobe's company trucks.

On December 13, 2000, Deputy Jorge Andujo spoke with Jobe's production assistant manager, Victor Garcia, about the drag-racing problem. Andujo knew from prior experience that the drag racers escaped the deputies' attempts to stop them by driving on the dirt roads at high rates of speed, posing a danger to themselves and the deputies. In order to contain the drag racers and prevent them from escaping from the deputies on the unpaved portion of the road, Andujo asked Garcia if Jobe would construct a berm fifty feet from the end of the paved portion of the roadway. Garcia told Andujo that he would first have to check with Jobe's vice president, Irene Eperson. Upon receiving approval from Eperson, Garcia told Andujo that they would build the berm that afternoon and then remove it the following morning. Andujo maintains that he did not specify the details of how the berm would be built by Jobe, but Garcia recalled that Andujo told him to build the berm across the entire road so that no one could go through onto the unpaved road. No one from the Sheriff's Department was present when Jobe constructed the berm.

Garcia instructed a Jobe employee to build a small sand berm using one of Jobe's front end loaders. He told the employee to build it no higher than two feet but there is evidence that the berm was three to five feet in height, or perhaps even taller.

At approximately 8 p.m. on December 13, 2000, Deputy Andujo and three other deputies arrived on Cherrington Road and saw numerous vehicles. Although the deputies had activated their emergency lights and sirens, several vehicles fled at a high rate of speed on Cherrington. Andujo and the other deputies did not give chase because the road was blocked by the berm. Andujo watched several vehicles apply their brakes at the end of the road and turn around. But three vehicles did not turn around. Two of them turned into Jobe's employee parking lot in an effort to hide from the deputies. The third vehicle, a small, dark-colored four-wheel-drive truck, escaped. Andujo and the other deputies did not see any vehicles collide with the berm.

The following afternoon, Adrian Ramirez filed an accident report with the Sheriff's Department. While driving his black Toyota four-wheel-drive truck on Cherrington the previous evening sometime between 8 and 9:30 p.m., he collided with the dirt and rock berm which he estimated to be four to six feet tall.[2] The collision caused extensive damage to the front end of the vehicle. Ramirez claimed to have been driving 30 miles per hour at the time of the collision. Present in the truck with Ramirez were his two minor children and a neighbor, Joe Sepulveda.

1. Jobe had "no trespassing" signs on the gate at its entrance, and after this incident, placed "no trespassing" signs on the unpaved portion of the road. Jobe later placed locked gates to prevent members of the public from driving on the unpaved portion of the road.

2. In his deposition, Ramirez maintained that he told the deputy who took his accident report that the accident occurred sometime between 8 and 9:30 that evening.

Ramirez and the other plaintiffs filed suit against Jobe,[3] the County, and Sheriff Samaniego, seeking to recover damages for injuries received in the accident. Their pleadings allege that the County defendants[4] directed Jobe to construct the barricade across the roadway and were negligent in failing to warn persons traveling on the road about the obstruction and in failing to inspect and correct a dangerous condition. Additionally, they allege that the County engaged in negligent supervision. The County filed a plea to the jurisdiction, alleging that sovereign immunity had not been waived. The trial court granted the plea to the jurisdiction.

## PLEA TO THE JURISDICTION

In Issue One,[5] Appellants assert that the trial court erred in granting the plea to the jurisdiction because their petition states a claim for which sovereign immunity is waived under the Texas Tort Claims Act.

### *Standard of Review*

■ When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. *City of Austin v. L.S. Ranch, Ltd.,* 970 S.W.2d 750, 752 (Tex. App.-Austin 1998, no pet.). A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. *City of Saginaw v. Carter,* 996 S.W.2d 1, 2 (Tex.App.-Fort Worth 1999, pet.dism'd w.o.j.); *State v. Benavides,* 772 S.W.2d 271, 273 (Tex.App.-Corpus Christi 1989, writ denied). The plaintiff has the

burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 446 (Tex.1993); *City of Saginaw,* 996 S.W.2d at 2. Subject matter jurisdiction is a legal question which we review *de novo. City of Saginaw,* 996 S.W.2d at 2; *Texas Dept. of Health v. Doe,* 994 S.W.2d 890, 892 (Tex.App.-Austin 1999, pet. dism'd by agr.). We consider the allegations in the petition and accept them as true. *See City of Saginaw,* 996 S.W.2d at 2–3. The plaintiff's jurisdictional pleadings are to be construed liberally in the plaintiff's favor and we look to the pleader's intent. *See Texas Association of Business,* 852 S.W.2d at 446. A court deciding a plea to the jurisdiction, however, is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Independent School District v. Blue,* 34 S.W.3d 547, 555 (Tex.2000); *see County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002). The court should confine itself to the evidence relevant to the jurisdictional issue. *Blue,* 34 S.W.3d at 555.

### *Causes of Action Against Sheriff Samaniego*

■ Before addressing the merits of the issues raised on appeal, we note that Appellants have not specifically addressed the dismissal of their causes of action against Sheriff Samaniego. Sheriff Samaniego is entitled to derivative immunity pursuant to

---

**3.** The trial court severed the claims against the County and Sheriff Samaniego from the claims against Jobe.

**4.** In the remainder of the opinion, we will refer to El Paso County and Sheriff Samaniego as the County defendants or simply as the County.

**5.** Appellants' brief discusses the applicable standard of review in paragraph "A" and presents their arguments under paragraphs "B," "C," and "D." For convenience, we will treat paragraph "B" as Issue One, paragraph "C" as Issue Two, and paragraph "D" as Issue Three.

Section 101.106 of the Texas Civil Practice and Remedies Code.[6] *See Harris County v. Sykes,* 136 S.W.3d 635, 640 (Tex.2004). The purpose of Section 101.106 is to protect employees of a governmental unit from liability when a judgment against or a settlement from the government employer has been obtained pursuant to a claim under Chapter 101 of the Texas Tort Claims Act. *Id.* In *Sykes,* the Supreme Court held that a dismissal on a plea to the jurisdiction is a judgment for purposes of Section 101.106. *Id.* With respect to those claims against the County which were properly dismissed by the trial court, Sheriff Samaniego is entitled to derivative immunity under Section 101.106 of the Texas Tort Claims Act.

### Operation or Use of Motor–Driven Equipment

In its plea to the jurisdiction, the County contended that Appellants' injuries were not caused by a governmental employee's operation or use of a motor-driven vehicle or equipment, but rather were caused by Adrian Ramirez's operation of his own motor vehicle. Asserting that the County and Sheriff's Department, through Deputy Andujo, directed Jobe to build a dirt barricade across Cherrington Road, Appellants first argue that their claim falls within Section 101.021(1). Appellants acknowledge that Deputy Andujo did not personally operate or use motor-driven equipment, but they argue that he negligently exercised control over the Jobe employee who used the front-end loader to build the berm.

A county is a governmental unit protected by the doctrine of sovereign immunity. *Catalina Development, Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003). Generally, a governmental unit possesses both immunity from liability and immunity from suit. *Id.* The governmental unit waives immunity from suit only through its express consent. *Id.* Section 101.021(1) of the Texas Tort Claims Act provides that a governmental unit is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997).

The waiver of immunity provided by Section 101.021 is a limited one. Under Section 101.021(1), a governmental unit is not liable for a personal injury caused by a negligent employee unless the injury "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." *Id.* The phrase "arises from" requires a nexus between the injury negligently caused by a governmental employee and operation or use of a motor-driven vehicle or equipment. *LeLeaux v. Hamshire–Fannett Independent School Dis-*

---

**6.** This section provides:

 (c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

 (d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.106(c)(d)(Vernon Pamphlet 2004–05).

*trict,* 835 S.W.2d 49, 51 (Tex.1992). In *LeLeaux,* a high school band student jumped out of the rear emergency door of a parked school bus to retrieve a pillow that had fallen. The student bumped her head when she re-entered through the same door. The bus driver was not present when these events took place. After the bus driver entered the bus and discovered that the back door was open, he asked the student to close it and she fell to the ground. The student sued the school district, alleging that the school district was negligent in its operation and use of school buses because of its practice of regularly loading and unloading band students and their instruments through the emergency doors. She made the same allegation against the bus driver. The trial court granted summary judgment for the school district on the ground of sovereign immunity. The Supreme Court held that while the statute does not specify whose operation or use is necessary—the employee's, the person who suffers injury, or some third party—the more plausible reading is that the required operation or use is that of the employee. *Id.* This requirement is consistent with the limited waiver of sovereign immunity provided by the Tort Claims Act. *Id.* Because the injury did not result from an employee's operation or use of the bus, the court held that sovereign immunity was not waived. *Id.*

The Beaumont Court of Appeals followed *LeLeaux* in *Tarkington Independent School District v. Aiken,* 67 S.W.3d 319 (Tex.App.-Beaumont 2002, no pet.). There, a participant in a summer job training program sued the school district for injuries he received on school property while riding on the tailgate of a privately-owned truck driven by another program participant. The program participants had been instructed by a school district employee to move desks from one building to another, but they had not been told to use the truck for the task. The plaintiff's suit alleged negligent acts and/or omissions relating to improper supervision, direction, and control of non-employees and the improper training of school district employees. He also alleged that his injuries arose from the operation or use of a motor-driven vehicle. However, he did not allege that a school district employee operated or used the vehicle. The court held sovereign immunity was not waived because the allegations of negligence were not related to an employee's negligent use or operation of a vehicle. *Id.* at 326.

Appellants cite four cases in support of their argument that sovereign immunity is waived under Section 101.021(1). In *Sem v. State,* 821 S.W.2d 411 (Tex.App.-Fort Worth 1991, no pet.), a decision which predates *LeLeaux,* the Texas State Department of Highways and Public Transportation entered in a contract with Tex–Sun Construction Company to pick up trash along state highways. The plaintiffs alleged that the State had inspectors on the job daily and exercised the right to control the details of the work performed by the contractor. A Tex–Sun employee was killed when struck by a car while attempting to post a warning sign along a freeway. His children sued the driver of the car, the contractor, and the State. Plaintiffs alleged that the defendants negligently used tangible personal property and operated or used a motor-driven vehicle or equipment which did not have adequate warning devices. With respect to the State, they specifically alleged that the State was negligent in its right of control over use and placement of the signs and other warning devices, including the warning device on the independent contractor's vehicles. The trial court granted the State's motion for summary judgment based on sovereign immunity. Relying on Section 414 of the

Restatement (Second) of Torts,[7] the Fort Worth Court of Appeals found that summary judgment was improperly granted because there was a fact issue whether the State retained and exercised sufficient control over the manner in which the independent contractor performed its work even though it did not retain the degree of control which would subject it to liability as a master. *Id.* at 415. Certain provisions in the contract indicated that the State retained the power to forbid work from being done in a dangerous manner. *Id.* Holding that the Tort Claims Act must be liberally construed, the court of appeals also rejected the State's argument that sovereign immunity is not waived under Section 101.021 because it did not own or use the tangible personal property or vehicle in question. *Id.* at 415–16. The court held that the Tort Claims Act does not require that the State own or directly use the vehicle or property that causes death, and therefore, immunity is waived in circumstances where the State has assumed responsibility for proper use of tangible personal property and negligent exercise of this responsibility by its employee results in death. *Id.* at 416.

We turn next to *County of Galveston v. Morgan,* 882 S.W.2d 485 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Morgan, the employee of an independent contractor, was injured when he fell from the bed of a truck while delivering road resurfacing material to repair a county road. Galveston County supplied spotters signaled the truck drivers when to move forward and when to stop. One of the spotters moved the truck too close to a power line and Morgan climbed into the bed of the truck to determine how close it was to

the power line. He received an electric shock which knocked him to the ground. The jury found Morgan and the county equally negligent. On appeal, the county challenged the legal and factual sufficiency of the evidence to support a finding that the accident arose from a county employee's use or operation of a motor driven vehicle. The county argued that the vehicle was not a county truck and the driver was not a county employee. The court of appeals rejected these arguments and found a waiver of immunity because the county spotters "used" or "operated" the trucks by controlling their movements. *Id.* at 490. The court distinguished *Le-Leaux* on the ground that while the bus was not in use and merely provided the setting for the student's injury, the truck in the instant case was in use at the time of the accident. *Id.* at 490–91.

In *City of El Campo v. Rubio,* 980 S.W.2d 943 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.), the Corpus Christi Court of Appeals followed *Morgan.* In that case, a police officer allegedly ordered an unlicensed passenger to operate a motor vehicle following the driver's arrest. The passenger, in accordance with the officer's order, followed the patrol car onto the highway and was struck by another vehicle. The court of appeals found that immunity was waived because the officer "used" or "operated" the vehicle by exercising control over it. *Id.* at 945–46.

And finally, in *City of El Paso v. W.E.B. Investments,* 950 S.W.2d 166 (Tex.App.-El Paso 1997, pet. denied), the City of El Paso's street operations supervisor mistakenly ordered a third party's motor-driven equipment to demolish a condemned build-

---

**7.** This section provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement(Second) of Torts, § 414 (1977).

ing before the time had expired for repairs to be made. This court found sovereign immunity was waived even though a governmental employee did not personally operate the motor-driven equipment. *Id.* at 170.

The County insists that the foregoing cases conflict with *LeLeaux* and should not be followed. We believe that the holding can be reconciled. The Supreme Court did not hold in *LeLeaux* that the vehicle had to be driven by a governmental employee; it held only that a governmental employee "use" or "operate" the vehicle. *Rubio,* 980 S.W.2d at 946. "Operation" refers to a "doing or performing of a practical work" and "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux,* 835 S.W.2d at 51. In *LeLeaux,* the bus was not in use or operation at the time of the accident and was nothing more than the place where the student happened to injure herself. *Id.* In *Morgan, Rubio,* and *W.E.B. Investments,* however, there were allegations and evidence that a governmental employee "used" or "operated" a vehicle by directly controlling the actions of the actual operator. In *Sem,* the plaintiffs alleged that the State retained and exercised control over the warning devices used by the independent contractor, including those on its vehicles, and that Sem's death occurred because the vehicle he was using did not have the proper omnidirectional warning device. Thus, the plaintiffs sufficiently alleged that the State "used" or "operated" a motor-driven vehicle or used tangible personal property.

The instant case is distinguishable from *Sem, Morgan, Rubio,* and *W.E.B. Investments.* It is undisputed that a county employee did not personally operate or use a motor-driven vehicle or equipment used to construct the berm. Appellants did not plead and there is no evidence

showing that the County retained any degree of control over Jobe's construction of the berm. To the contrary, the evidence heard by the trial court established that the County did not retain or exercise any control over Jobe with respect to the construction of the berm. Thus, it cannot be said that an employee "used" or "operated" the motor-driven equipment used to build the berm, and therefore, sovereign immunity is not waived under Section 101.021(1).

### *Condition or Use of Tangible Personal Property*

Appellants generally allege that sovereign immunity is waived under Section 101.021(2). Pursuant to this section, a governmental unit is liable for personal injury and death caused by a condition of real property or a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 101.021(2). To state an actionable claim under Section 101.021(2) based upon the "condition" of tangible personal property, it is sufficient to allege that defective property contributed to the injury. *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30, 32 (Tex.1983); *Gonzales v. City of El Paso,* 978 S.W.2d 619, 623 (Tex. App.-El Paso 1998, no pet.). Appellants' pleadings do not contain any allegations regarding defective personal property and there is no evidence to support such a claim.

To state a claim under the Act based upon the use or misuse of nondefective tangible personal property, a plaintiff must allege (1) that the property was used or misused by a governmental employee acting within the scope of his or her employment and (2) that the use or misuse of the property was a contributing

factor to the injury. *Salcedo,* 659 S.W.2d at 32; *Gonzales,* 978 S.W.2d at 623. The negligence of the government employee must be the proximate cause of the injury and must involve a use or misuse of tangible personal property under circumstances where there would be private liability. *Salcedo,* 659 S.W.2d at 32; *Gonzales,* 978 S.W.2d at 623. The property itself need not be the instrumentality of the alleged harm, but it must have been a contributing factor to the harm. *Gonzales,* 978 S.W.2d at 623; *see Salcedo,* 659 S.W.2d at 32. The Act does not provide for liability based upon a non-use of property. *Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994).

While Appellants generally assert on appeal that their pleadings state a cause of action for use of tangible personal property, they do not identify the personal property in either their pleadings or briefing. Having reviewed the pleadings and evidence adduced at the hearing, we cannot conclude that Appellants have either alleged or demonstrated that their injuries resulted from the use or misuse of tangible personal property. Issue One is overruled.

### *Premises Defect*

In Issue Two, Appellants allege that sovereign immunity is waived because the berm constitutes both a premises defect and a special defect. The County contends on appeal, as it did in the trial court, that sovereign immunity is not waived under the Tort Claims Act because the County does not own Cherrington Road and it has no duty to maintain the road.

 Liability for premises defects is implied under Section 101.021(2) because premises defects arise from a condition existing on real property. *City of Midland v. Sullivan,* 33 S.W.3d 1, 6 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.); *Lamar University v. Doe,* 971 S.W.2d 191, 195 (Tex.App.-Beaumont 1998, no pet.). With respect to ordinary premises defects, however, the Act specifically limits the governmental duty owed a claimant to "the duty that a private person owes to a licensee on private property." *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002), *quoting* TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(a). Thus, a governmental unit may be liable for an ordinary premises defect only if a private person would be liable to a licensee under the same circumstances. *Brown,* 80 S.W.3d at 554.

 A property possessor must not injure a licensee by willful, wanton, or grossly negligent conduct, and must use ordinary care either to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to make the condition reasonably safe. *Brown,* 80 S.W.3d at 554; *State Department of Highways & Public Transportation v. Payne,* 838 S.W.2d 235, 237 (Tex. 1992). A licensee asserting a premises-defect claim generally must show that the defendant possessed—that is, owned, occupied, or controlled—the premises where the injury occurred. *Brown,* 80 S.W.3d at 554. A premises-liability defendant may be held liable for a dangerous condition on the property if it "assum[ed] control over and responsibility for the premises," even if it did not own or physically occupy the property. *Brown,* 80 S.W.3d at 556, *quoting City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex.1986). The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it. *Brown,* 80 S.W.3d at 556. Additionally, a private person who has created the dangerous condition may be liable even though not in control of the premises

at the time of injury. *Page,* 701 S.W.2d at 835.

■ The evidence revealed that Cherrington Road is a dedicated public road but it has not been placed in the county road system and the County has not assumed a duty to maintain it. But the evidence also shows that the County, through its employee Deputy Andujo, requested[8] that Jobe construct a dirt barricade across the roadway in order to assist the Sheriff's Department in apprehending the drag racers who were interfering with Jobe's business operations. Giving a liberal construction to the pleadings and taking the relevant evidence in favor of the Appellants, there is at least some evidence that the County created the dangerous condition, and therefore, it would have the responsibility to either warn of the danger or remedy it. The trial court erred in finding that sovereign immunity is not waived under Section 101.022(a).

### *Special Defect*

■ Where there is a special defect, the governmental entity has the same duty to warn that one owes an invitee. *Payne,* 838 S.W.2d at 237; TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b)(Vernon 1997).[9] That duty requires an owner or occupier to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner or occupier is or reasonably should be aware. *Id.* Where a special defect exists, it is the duty of the governmental unit that owns or controls a roadway to warn of the defect even though that governmental unit did not create the defect. *Harris County v. Eaton,* 573 S.W.2d 177, 179–80 (Tex.1978).

■ The County does not allege that the temporary dirt berm or barricade, which plainly obstructed the roadway on the evening of December 13, 2000, was not a special defect. Rather, it argues that it did not own or control the roadway, and therefore, it did not have a duty to warn of the defect. As noted above, the evidence reflects that the County did not own or have a duty to maintain Cherrington Road. But there is evidence indicating that the County exercised control over Cherrington Road on the date in question by ordering Jobe to construct the barricade blocking the roadway. We have found no cases addressing similar facts, but we conclude that ordering the placement of a barricade on a public roadway constitutes the type of control which would subject a governmental unit to a duty to warn. For the foregoing reasons, Issue Two is sustained.

### ALLOWING PLAINTIFFS TO REPLEAD

■ Finally, in Issue Three, Appellants argue that the trial court should have given them an opportunity to re-plead. We will address this contention as it applies to Issue One. As a general rule, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect. *Sykes,* 136 S.W.3d at

---

8. We acknowledge that there is a fact issue regarding whether Deputy Andujo instructed Jobe to place a dirt barricade across the roadway. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Texas Department of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227–28 (Tex.2004).

9. Section 101.022(b) provides: (b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060. TEX.CIV.PRAC. & REM.CODE ANN. § 101.022(b).

639; *see Brown,* 80 S.W.3d at 555 (when a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend). On the other hand, dismissal with prejudice is appropriate when the pleadings affirmatively negate the existence of jurisdiction because of the sovereign immunity bar. *Sykes,* 136 S.W.3d at 639; *Brown,* 80 S.W.3d at 555. Further, if a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action with prejudice, because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined. *Sykes,* 136 S.W.3d at 639.

Appellants filed their third amended petition on May 28, 2002 and the County defendants filed their plea to the jurisdiction on August 30, 2002. Almost eleven months later, Appellants filed their response to the plea to the jurisdiction on July 14, 2003, but they did not amend their pleadings. The trial court granted the plea to the jurisdiction on October 27, 2003. Appellants had ample opportunity to amend their pleadings after the County filed its plea to the jurisdiction, but did not do so. The evidence considered by the trial court in connection with those claims based on operation or use of a motor-driven vehicle or equipment and use of tangible personal property indicates that the claims are barred by sovereign immunity. For these reasons, the trial court did not err in granting the plea to the jurisdiction without giving Appellants an opportunity to re-plead. Issue Three is overruled.

Having overruled Issues One and Three, we affirm that portion of the order granting the plea to the jurisdiction with respect to those claims based on operation or use of a motor-driven vehicle or equipment under Section 101.021(1), and condition or use of tangible personal property under Section 101.021(2). Having sustained Issue Two, we reverse that portion of the order granting the plea to the jurisdiction with respect to the premises defect and special defect claims. This cause is remanded to the trial court for further proceedings consistent with this opinion.