IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 14, 2013

**BILLY COFFELT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2002A583     J. Randall Wyatt, Jr., Judge**

---

**No. M2012-02241-CCA-R3-PC - Filed January 28, 2014**

---

The Petitioner, Billy Coffelt, appeals the Davidson County Criminal Court's denial of post-conviction relief from his convictions for aggravated assault, three counts of misdemeanor theft, four counts of false imprisonment, and felony escape. In his appeal, the Petitioner argues that he received ineffective assistance of counsel based upon allegations that Counsel failed to move for an election of offenses; failed to pursue a claim based on the dismissal of one of the Petitioner's co-defendant's charges on appeal; and failed to request a jury instruction on the "natural and probable consequences" rule for criminal responsibility or raise it as a ground for relief on direct appeal.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

David A. Collins, for the Defendant-Appellant, Billy Coffelt.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Ben Ford, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Facts.**  This court summarized the underlying facts in this case on direct appeal as follows:

> On September 28, 2001, [the Petitioner and his co-defendant, Lyle Van Ulzen,] were transported from Riverbend Penitentiary to the Davidson County

Courthouse. Three unarmed transportation officers, William Engel, Karen Wev, and Charles Abbott, were escorting the defendants through the tunnel area leading to the Criminal Justice Center when Defendant Van Ulzen displayed two handmade knives (shanks), each six to eight inches long. The defendants effected a release from their restraints, and the three officers were handcuffed to a railing in a room near the elevator. A fourth officer, Lyle Beckjordan, appeared on the scene and was also handcuffed to the railing with the other officers. The defendants, after donning two of the officers' clothes, made their escape. Both defendants were captured together, without incident, that afternoon.

According to Officer Engel, Defendant Van Ulzen, after displaying the shanks, stated that he did not want to hurt anyone. Defendant Van Ulzen then said that if Engel did not cooperate, someone was going to be "stuck." Engel was instructed to unlock [the Petitioner], which he did. The two defendants then freed themselves of their restraints. Corporal Wev was told to handcuff the officers to a railing. Defendant Van Ulzen took Engel's pants and jacket and put them on. Engel was then told to handcuff himself to the railing. At one point, Defendant Van Ulzen became agitated and threatened to "stick" somebody if they did not move faster. When Beckjordan got off the elevator, Defendant Van Ulzen brought him over and had him handcuff himself to the railing. [The Petitioner] made no statements during the incident. Engel's keys were taken but were thrown to the floor. All of the other officers still had their handcuff keys, enabling them to free themselves after the defendants left the scene. Engel first estimated the time elapsed at eight to ten minutes between Defendant Van Ulzen's pulling the shanks until the officers escaped the room. In Engel's debriefing to the Tennessee Bureau of Investigation (TBI) on the date of the escape, he had estimated the incident lasted two to three minutes and, finally, on cross-examination, estimated a length of four to five minutes.

Officer Karen Wev testified that after Defendant Van Ulzen brandished the shanks, he ordered Engel to give [the Petitioner] the handcuff keys. [The Petitioner] then freed himself and Defendant Van Ulzen. Defendant Van Ulzen was instructing [the Petitioner] and had him handcuff Abbott and Engel to the rail and hand Wev leg irons to handcuff herself to the rail. After the defendants put on the guard uniforms, Defendant Van Ulzen went out to summon the elevator while [the Petitioner] stayed in the room. Officer Wev then saw Defendant Van Ulzen pushing Officer Beckjordan into the room and holding a shank at Beckjordan's side. Defendant Van Ulzen told [the Petitioner] to handcuff Beckjordan to the railing. The defendants took Engel's

and Abbott's radios and left. Wev estimated first that the entire incident lasted fifteen to twenty minutes but later said she could not be certain.

Officer Charles Abbott testified he was behind [the Petitioner] when Defendant Van Ulzen pulled the shanks. [The Petitioner] took Abbott by the arm and pulled him, saying, "get on up there man." Abbott shoved him back but then obeyed the orders. Abbott's and Engel's pants and jackets were taken by the defendants. [The Petitioner] handcuffed Abbott to the rail. When Beckjordan arrived, he was brought into the room by Defendant Van Ulzen with a shank at Beckjordan's side. Abbott estimated the entire incident lasted less than three minutes. On cross-examination, he stated that Defendant Van Ulzen was "calling the shots" and that [the Petitioner] appeared afraid to go through with the escape.

Officer Lyle Beckjordan stated that when he arrived he was met by [Defendant Van Ulzen] who pushed him up against the elevator and told him not to move or he would "stick" him. He said Defendant Van Ulzen was holding a shank at Beckjordan's lower rib cage. Beckjordan was taken from the room with the other guards and handcuffed to the railing by [the Petitioner]. [The Petitioner] took Beckjordan's radio when the defendants left. Beckjordan estimated that the incident of his confrontation with Defendant Van Ulzen until he was free lasted approximately five minutes.

State v. Lyle Van Ulzen and Billy J. Coffelt, No. M2003-02066-CCA-R3-CD, 2005 WL 1000240, at *2-3 (Tenn. Crim. App. April 29, 2005), perm. app. denied (Tenn. Oct. 17, 2005).

The Petitioner was convicted by a Davidson County jury of aggravated assault, three counts of misdemeanor theft, four counts of false imprisonment, and felony escape, for which he received an effective sentence of twenty-one years in confinement. On direct appeal, this Court reversed and dismissed co-defendant Van Ulzen's conviction for aggravated assault based on double jeopardy grounds, but otherwise affirmed the judgments of the trial court. See Lyle Van Ulzen, 2005 WL 1000240, at *11.

On September 18, 2006, the Petitioner filed a pro se petition for post-conviction relief, alleging, inter alia, ineffective assistance of counsel. The Petitioner was subsequently appointed counsel, and an amended petition for post-conviction relief was filed on February 11, 2010. A hearing was held on April 27, 2010, after which the post-conviction court denied the petition for post-conviction relief.

**Post-Conviction Hearing.** At the post-conviction hearing, the Petitioner testified on his own behalf and the State called the Petitioner's trial counsel to testify. The Petitioner testified extensively about perceived errors in Counsel's representation throughout the trial. He complained that counsel failed to file several motions, including a motion to change venue, a motion to recuse, and a motion to sever the case from the Petitioner's co-defendant. The Petitioner maintained that these motions were warranted based on pretrial publicity, the trial judge's prior involvement in the Petitioner's case, and the fact that the Petitioner's co-defendant entered a guilty plea in the case. The Petitioner testified that he urged Counsel to pursue a duress defense, based on the Petitioner's testimony that he was "stresse[d] out" from being transported from the prison to the courthouse 34 times for court appearances and that he was fearful of his co-defendant, but that Counsel refused. He also testified that Counsel failed to investigate a "medical type defense" based on a medical condition suffered by the Petitioner during childhood.

The Petitioner further complained that Counsel failed to challenge the indictment, which the Petitioner asserted was defective, or challenge the trial court's imposition of consecutive sentencing. Additionally, Counsel failed to request the trial court to charge the jury with pattern jury instructions on aggravated kidnapping and failed to raise the issue on direct appeal. Similarly, Counsel failed to request the trial court to charge the jury with the "natural and probable consequences" rule for criminal responsibility, and failed to raise it as an issue in the motion for new trial or on direct appeal. The Petitioner also testified that Counsel was ineffective for failing to force the state to elect between sending aggravated robbery and aggravated assault to the jury. He maintained that had Counsel forced the election, he would not have been convicted of aggravated assault. Finally, the Petitioner testified that his aggravated assault conviction based on criminal responsibility for the conduct of his co-defendant violates his rights because his co-defendant's aggravated assault conviction was dismissed on appeal based upon double jeopardy.

Trial counsel testified that he did not recall a lot of pretrial publicity surrounding the Petitioner's case and opined that there were no grounds to move for a change of venue. He testified that an oral motion to recuse was made before the trial judge and was denied. He also testified that the Petitioner proposed a duress defense to him, but maintained that he didn't see "any real validity" to that defense and feared losing credibility with the jury by pursuing it. He stated that his "main defense" was to "blame [co-defendant] Van Ulzen . . . for everything that occurred" and argue that the Petitioner "just happened to be there with him." He testified that he did not file for a severance motion even after learning that the co-defendant was going to plead guilty because he planned "to blame [co-defendant] Van Ulzen for everything."

Counsel recalled that his "main focus" on direct appeal was the sufficiency of the evidence for the aggravated assault conviction. He stated that he "brought up the other issues" regarding sentencing on appeal, but "really tried to work hard on the aggravated assault conviction." He agreed that he had "no idea" that the co-defendant's aggravated assault conviction would be dismissed on appeal. He testified that he did not recall any issue with an election of offenses at trial, but agreed that he "would not expect a lay person" to be aware of that issue.

The post-conviction court took the matter under advisement and entered a detailed written order denying relief on August 21, 2012. The court denied relief on all grounds, concluding that the Petitioner had failed to prove the allegations in his petition by clear and convincing evidence. As relevant to the issues raised in this appeal, the post-conviction court made the following findings and conclusions:

> The Petitioner also alleges that [Counsel] was ineffective for failing to request that the Court charge the jury with the natural and probable consequences portion of the jury charge on criminal responsibility . . . and for not raising the issue in the motion for new trial or the direct appeal. The Court notes that the natural and probable consequences rule arose as a common law component and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime. See State v. Carson, 950 S.W.2d 951 (Tenn. 1997). The Petitioner cites State v. Howard, 30 S.W.3d 271 (Tenn. 2000) for the proposition that when a defendant is charged with a violent offense under the theory of criminal responsibility, then the natural and probable consequences rule becomes an element of the offense that must be proven beyond a reasonable doubt. . . . The Court finds, however, that the jury was not charged with the natural and probable consequences rule and that [Counsel] failed to request the instruction and failed to raise the issue in the Petitioner's motion for new trial and direct appeal. The Court finds that [Counsel] was ineffective for this deficiency. . . . The Court finds that [Counsel]'s failure to request this particular instruction resulted in harmless error to the Petitioner . . . because in effecting his escape with his co-defendant, [the Petitioner] would reasonably have had to anticipate and foresee the necessity of overpowering the transportation officers that were escorting them to the Criminal Justice Center to free themselves of the officers' custody. The Court, therefore, finds that the absence of the instruction was harmless and resulted in no prejudice to the Petitioner.
>
> . . .

The Petitioner also alleges that his due process rights have been violated . . . because he was held criminally responsible for his co-defendant's aggravated assault, which was ultimately reversed on appeal[.] The Court finds that the Petitioner does not allege ineffective assistance in regards to this issue. Accordingly, the Court finds that his issue is waived.

. . .

The Petitioner also alleges that [Counsel] was ineffective in his failure to require the State to elect whether the case was going to the jury on the aggravated robbery charge or the aggravated assault charge. The Court finds that even if [Counsel] had made an election request and such was granted, the Petitioner has failed to show that he was prejudiced by the absence of the request. The Court finds that the Petitioner was only convicted of aggravated assault and no double jeopardy implications arose for the failure to request an election.

The Petitioner filed a timely notice of appeal following the post-conviction court's order.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel based upon three grounds: (1) Counsel's failure to move for an election of offenses; (2) Counsel's failure to pursue a claim based on the dismissal of co-defendant Van Ulzen's aggravated assault conviction; and (3) Counsel's failure to request a jury instruction on the "natural and probable consequences" rule for criminal responsibility or raise it as a ground for relief on direct appeal.[1]

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover,

---

[1] The Petitioner alleged a number of additional grounds for relief in his petition for post-conviction relief and during his testimony at the post-conviction hearing. These additional grounds were not raised in his brief to this Court. Consequently, we will not address them herein.

factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In the present case, the Petitioner first argues that he received ineffective assistance of counsel based upon Counsel's failure to force the State to elect between sending aggravated robbery and aggravated assault to the jury. In denying relief, the post-conviction court concluded "the Petitioner has failed to show that he was prejudiced by the absence of the request," noting that "the Petitioner was only convicted of aggravated assault and no double jeopardy implications arose for the failure to request an election." The Petitioner disagrees with the post-conviction court's conclusion, and maintains that "the verdicts returned in this case demonstrate prejudice." Further, he asserts that it was "plain error for the trial court not to require the State to make the election." The State responds that the election doctrine is not implicated by the Petitioner's case, and in any event, the trial court properly concluded that the Petitioner failed to prove he was prejudiced. We agree with the State.

The Tennessee Supreme Court stressed the importance of election in State v. Adams:

"This Court has consistently held that when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999) (citing Tidwell v. State, 922 S.W.2d 497 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801 (Tenn. 1973)). This election requirement serves several purposes. First, it ensures that a defendant is able to prepare for and make a defense for a specific charge. Second, election protects a defendant against double jeopardy by prohibiting retrial on the same specific charge. Third, it enables the trial court and the appellate courts to review the legal sufficiency of the evidence. The most

-8-

important reason for the election requirement, however, is that it ensures that the jurors deliberate over and render a verdict on the same offense. Brown, 992 S.W.2d at 391; Burlison, 501 S.W.2d at 803. This right to a unanimous verdict has been characterized by this Court as "fundamental, immediately touching on the constitutional rights of an accused . . . ." Burlison, 501 S.W.2d at 804.

24 S.W.3d 289, 294 (Tenn. 2000). "When the evidence does not establish that multiple offenses have been committed, however, the need to make an election never arises." Id. "The State is not required to elect upon separate charges in the same indictment, although the defendant may demand election between factual occurrences." State v. Henley, 774 S.W.2d 908, 914 (Tenn. 1989). Where "the jury convicts the defendant of more than one alternative count of the charged offense, the trial court should merge the guilty verdicts into a single conviction[,]" which avoids double jeopardy concerns. Authur Lee Taylor v. State, No. W2011-00027-CCA-R3-PC, 2012 WL 432856, at *5 (Tenn. Crim. App. Feb. 7, 2012), perm. app. denied (Tenn. May 16, 2012), cert. denied, 133 S. Ct. 382 (2012).

In the present case, the Petitioner's aggravated assault and aggravated robbery charges were both based upon a single transaction: co-defendant Van Ulzen's use of a knife against Corporal Engel to effect the escape of co-defendant Van Ulzen and the Petitioner. Therefore, because only a single transaction was at issue, we agree with the State that the election doctrine was not implicated. See Adams, 24 S.W.3d at 294; see also, State v. Beard, 818 S.W.2d 376, 378 (Tenn. Crim. App. 1991) (noting that "where the several counts of an indictment are based upon the same transaction, the State cannot be required to elect to proceed upon one count or the other") (quoting Halquist v. State, 489 S.W.2d 88, 92 (Tenn. Crim. App. 1972)). Accordingly, we conclude that Counsel was not deficient for failing to request that the State be required to make an election of offenses. The Petitioner is not entitled to relief on this ground.[2]

The Petitioner next asserts that Counsel provided ineffective assistance because Counsel failed to pursue a claim based on the dismissal of co-defendant Van Ulzen's aggravated assault conviction. He maintains that Counsel should have filed a "petition to rehear . . . or a subsequent petition for writ of habeas corpus on the grounds that [the

---

[2] The Petitioner invited this Court to review the trial court's failure to require the State to elect between offenses for plain error. Notwithstanding our conclusion that the election doctrine was not implicated, we briefly note that "the plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed either waived or previously determined." Grindstaff v. State, 297 S.W.3d 208, 219 (Tenn. 2009). Here, the Petitioner failed to raise this issue on direct appeal, and therefore, the issue is deemed waived. See T.C.A. § 40-30-106(g).

Petitioner's] due process rights" were violated, and that the failure to do so rose to the level of ineffective assistance of counsel. The State responds that the Petitioner waived this issue for review because he did not include it as an allegation of ineffective assistance of counsel in his petition for post-conviction relief or in the post-conviction hearing. Further, the State asserts that even if this Court considers the substance of the issue, the Petitioner's claim is without merit.

We begin by noting that the Petitioner did not raise this issue as a ground of ineffective assistance of counsel in his petition for post-conviction relief or at the post-conviction hearing. Instead, his petition asserts that his due process rights were violated given that co-defendant Van Ulzen's aggravated assault conviction, upon which the Petitioner's conviction was based, was dismissed on double jeopardy grounds. The post-conviction court denied relief, concluding that the issue was waived because the Petitioner failed to raise it as a ground for ineffective assistance of counsel. In his brief to this Court, the Petitioner framed the issue, for the first time, as a ground of ineffective assistance of counsel. Consequently, we agree with the State that this issue has been waived. See T.C.A. §40-30-106(g); State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) ("A party may not raise an issue for the first time in the appellate court.").

Notwithstanding waiver, we conclude that the Petitioner's claim is without merit. On direct appeal in this case, a panel of this Court concluded that co-defendant Van Ulzen's convictions for aggravated robbery and aggravated assault violated double jeopardy. Consequently, the court reversed and dismissed co-defendant Van Ulzen's conviction for the lesser-included offense of aggravated assault. Indeed, "one cannot be convicted pursuant to a theory of criminal responsibility if there is no other person who is guilty of the crime as a principal." See State v. Farner, 66 S.W.3d 188, 205 (Tenn. 2001). However, co-defendant Van Ulzen's conviction for aggravated assault simply merged into the greater offense of aggravated robbery. Thus, Counsel's failure to pursue remedies based on this theory was not ineffective assistance of counsel and does not entitle the Petitioner to relief.

Finally, the Petitioner contends that Counsel provided ineffective assistance of counsel by failing to request a jury instruction on the "natural and probable consequences" rule for criminal responsibility or raise it as a ground for relief on direct appeal. With respect to this issue, the post-conviction court concluded that Counsel performed deficiently, but that the Petitioner failed to establish prejudice because the error was harmless. Citing to State v. Howard, 30 S.W.3d 271 (Tenn. 2000), the Petitioner asserts that because the natural and probable consequences rule is an element of the offense, it is a question solely for the jury and may not be determined by the trial court. The State responds that the post-conviction court properly applied a harmless error analysis to conclude that the Petitioner failed to demonstrate prejudice. We agree with the State.

Tennessee Code Annotated section 39-11-402(2) provides that an individual is criminally responsible for the conduct of another person if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Criminal responsibility is not a distinct crime but "a theory by which the state may prove the defendant's guilt based on another person's conduct." State v. Osborne, 251 S.W.3d 1, 16 (Tenn. Crim. App. 2007) (citing State v. Mickens, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003)). In the theory of criminal responsibility, "an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime can be inferred." State v. Watson, 227 S.W.3d 622, 639 (Tenn. Crim. App. 2006) (citing State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998)). In this situation, "no particular act need be shown, and the defendant need not have taken a physical part in the crime to be held criminally responsible." Id. (citing Ball, 973 S.W.2d at 293)). In order to be held criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with the knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976) (quoting Jenkins v. State, 509 S.W.2d 240, 244-45 (Tenn. Crim. App. 1974)).

"The natural and probable consequences rule arose as a common law component of criminal responsibility and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime." State v. Richmond, 90 S.W.3d 648, 654 (Tenn. 2002) (citing State v. Carson, 950 S.W.2d 166, 170 (Tenn. 1999)). "The rule underlies the doctrine of criminal responsibility and is based on the recognition that aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put into motion." Howard, 30 S.W.3d at 276 (citing Carson, 950 S.W.2d at 954-44). In Howard, the Tennessee Supreme Court set out a three prong test that courts are to apply when liability is based upon the natural and probable consequences rule:

> the State must prove beyond a reasonable doubt and the jury must find the following: (1) the elements of the crime or crimes that accompanied the target crime; (2) that the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and (3) that the other crimes that were committed were the natural and probable consequences of the target crime.

Howard, 30 S.W.3d at 276. The natural and probable consequences rule is an "essential element that the State must prove beyond a reasonable doubt," and failure to instruct the jury on this rule is constitutional error. Richmond, 90 S.W.3d at 657 (citing and quoting Howard,

-11-

30 S.W.3d at 277 n. 6). This error is harmless, however, if the State establishes "beyond a reasonable doubt that the error did not affect the outcome of the trial." Richmond, 90 S.W.3d at 657 (citing Neder v. United States, 527 U.S. 1 (1999)). The Tennessee Supreme Court further explained,

> We reiterate that it is the jury's role as fact-finder to decide whether the State has proven all essential elements of an offense beyond a reasonable doubt. See Howard, 30 S.W.3d at 277. Yet, the United States Supreme Court made clear in Neder that when a jury's verdict "necessarily included a finding" on the omitted element, the error may be harmless. 27 U.S. 1 (Stephens, J., concurring). Neder further clarified that this type of harmless error is not limited to situations wherein the jury's verdict necessarily included a finding on the omitted element. Thus, it is proper for a reviewing court to make a thorough examination of the record to determine if, beyond a reasonable doubt, the jury verdict would have been the same absent the error. See [State v. Allen,69 S.W.3d 181, 190 (Tenn. 2002)]. A reviewing court must ask whether the record contains evidence that could rationally lead to a contrary finding by the jury with respect to the omitted element. See id. If, after viewing the evidence in the light most favorable to the State, there is no rational basis for a contrary conclusion by the trier of fact, then the omitted element constitutes harmless error.

Richmond, 90 S.W.3d at 657-58 (footnote omitted).

In the present case, the jury found that the elements of aggravated assault were established beyond a reasonable doubt and that the Petitioner was criminally responsible for this crime. Under Howard, however, the State was also required to prove that the aggravated assault was a natural and probable consequence of the escape. Thus, "[p]roper instructions to the jury should have included a reference to this rule." See Richmond, 90 S.W.3d at 657. The post-conviction court concluded, and we agree, that Counsel performed deficiently by failing to request the instruction or raise it as an issue on direct appeal. Notwithstanding, the Petitioner is not entitled to relief unless he establishes that he was also prejudiced by Counsel's deficient performance. To determine whether or not the Petitioner was prejudiced, this Court "must determine whether the trial court's failure to instruct the jury on the natural and probable consequences rule was harmless error." See Billy J. Coffelt v. State, No. M2009-00474-CCA-R3-PC, 2010 WL 4396496, at *15. (Tenn. Crim. App. Nov. 5, 2010), perm. app. denied (Tenn. April 13, 2011).[3]

---

[3] Although Billy J. Coffelt, 2010 WL 4396496 involves the same two defendants and strikingly
(continued...)

Based upon our review of the record, we conclude that the aggravated assault would be a natural, probable and foreseeable criminal act of the escape. The Petitioner and his co-defendant were being transported by three officers from Riverbend Penitentiary to the Criminal Justice Center. As noted by the post-conviction court, the Petitioner and his co-defendant "would reasonably have had to anticipate and foresee the necessity of overpowering the transportation officers that were escorting them . . . to free themselves from the officers' custody." See Billy J. Coffelt, 2010 WL 4396496, at *16 (holding that aggravated assault was a natural and probable consequence of an escape by two Riverbend inmates, reasoning that the defendants would have had to "anticipate that they would have to overpower the guards at some point to make their way out of the prison"). Therefore, we conclude that the outcome of the trial would not have been different had the trial court instructed the jury on the natural and probable consequences rule and thus, the failure to instruct on the rule was harmless error. Accordingly, the Petitioner has failed to establish the prejudice prong required under Strickland and is not entitled to relief.

**CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

_____

[3](...continued)
similar facts as those in the present case, it is a separate case arising from a separate escape offense from Riverbend Penitentiary.